IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **KITCHEN CABINET MANUFACTURERS ASSOCIATION**,<br><br>　　　　　　　　**Plaintiff,**<br><br>　　v.<br><br>**K CABINETRY INC.; ALTIN GASHI**<br><br>　　　　　　　　**Defendants.** | CIVIL ACTION NO.: _____ |

　　　KITCHEN CABINET MANUFACTURERS ASSOCIATION ("KCMA" or "Plaintiff"), by counsel, hereby files this Complaint against K CABINETRY INC. ("K CABINETRY") and ALTIN GASHI (collectively, "Defendants" and each a "Defendant"), and alleges as follows:

**JURISDICTION AND VENUE**

　　　1.　　This action is for, in part, willful federal trademark infringement, unfair competition, and false advertising involving claims arising under the Trademark Act of the United States, commonly known as the Lanham Act 15 U.S.C. §§ 1051 et seq.; and for state trademark infringement and unfair competition under the laws of the Commonwealth of Virginia, involving claims arising under the Trademark Registration and Protection Act, Virginia Trademark and Service Mark Act §59.1-92.1 et seq., and the common law.

　　　2.　　This action is for, in part, breach of contract of the License Agreement executed between K CABINETRY and KCMA dated June 7, 2024 (the "License Agreement").

　　　3.　　This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121, and has subject matter jurisdiction over the state law

claims under 28 U.S.C. §§ 1338(b) and 1367 because such state law claims are joined with and related to claims under the Trademark Laws of the United States.

4.　　The Court has subject matter jurisdiction over the breach of contract claims as the License Agreement provides that any dispute arising under thereunder must be brought in Virginia.

5.　　This Court has personal jurisdiction over Defendants as Defendant K CABINETRY and all its agents and employees including Mr. Gashi, transact business in this district, in addition to being a party to the License Agreement which provides that any dispute arising under thereunder must be brought in Virginia. Therefore, Defendants are subject to personal jurisdiction in Virginia.

6.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because certain events or omissions giving rise to the claims in this action occurred in the Alexandria Division where Plaintiff's primary business office is located, and because Defendants are subject to this Court's personal jurisdiction with respect to this action.

## THE PARTIES

7.　　Plaintiff Kitchen Cabinet Manufacturers Association is an Illinois nonprofit corporation with its principal place of business located at 1768 Business Center Drive, Suite 390, Reston, Virginia 20190.

8.　　Defendant K Cabinetry Inc. is a Georgia Corporation with, upon information and belief, its principal place of business located at 7800 The Bluffs, Austell, Georgia 30168.

9.　　Upon information and belief, Defendant Altin Gashi is an individual residing in Georgia serving as a Senior Account Manager for Defendant K Cabinetry and that conducts business in the district.

10. Plaintiff KCMA is the owner of the trademarks and certification marks which are the subject of this lawsuit.

11. Plaintiff KCMA and Defendant K Cabinetry Inc. entered the License Agreement which is the subject of this lawsuit on June 7, 2024.

12. Upon information and belief, the Defendant Altin Gashi manages communications with third parties including providing them with evidence of K Cabinetry's certification for its cabinetry, with authority and agency for the offering and sale of goods by K Cabinetry.

13. Upon information and belief, Defendant Altin Gashi acting on behalf of K Cabinetry falsified its KMCA certificate and passed it on to a potential customer as described herein.

## FACTS

14. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 13.

### *Plaintiff and the KCMA Marks*

15. KCMA promotes the North American cabinet industry by representing members' interests in its association through policy decision-making in legislative and regulatory processes. With a membership of almost three hundred (300) companies throughout North America, KCMA works to advance the cabinet industry through advocacy, setting cabinet quality standards, sponsoring kitchen and bath cabinet-related research, and providing the cabinet industry with management tools and educational programs to grow their business.

16. As part of its mission and business operations, KCMA establishes benchmarks and standards that form the cabinet industry's primary quality certification programs.

17. KCMA's association services and certification services described above are offered

under the following federally registered trademarks and certification marks:

- ![Severe Use KCMA Certified Cabinet seal] (US Registration No. 7600531) in International Class "A" for the certification of *Kitchen and vanity cabinets*

- ![Certified Cabinet Complies with KCMA ANSI/KCMA A161.1-2000 seal] (US Registration No. 2873502) in International Class "A" for the certification of *Kitchen and vanity cabinets*

- ![Responsible Sustainable KCMA Certified Cabinet seal] (US Registration No. 5698978) in International Class "A" for the certification of *Kitchen and vanity cabinets*

- ![Quality Tested KCMA Certified Cabinet seal] (US Registration No. 5698721) in International Class "A" for the certification of *Kitchen and vanity cabinets*

- KITCHEN CABINET MANUFACTURERS ASSOCIATION (US Registration No. 3666071) in International Class 35 for *Association services, namely, promoting the interests of the kitchen cabinet manufacturing industry*

- KCMA (US Registration No. 3626843) in International Class 35 for *Association services, namely, promoting the interests of the kitchen cabinet manufacturing industry*

-  (US Registration No. 5820226) in International Class 35 for *Association services, namely, promoting the interests of the kitchen, bath and residential cabinet manufacturing industry*

-  (US Registration No. 5840387) in International Class 35 for *Association services, namely, promoting the interests of the kitchen, bath and residential cabinet manufacturing industry*

-  (US Registration No. 5698716) in International Class 35 for *Association services, namely, promoting the interests of the kitchen, bath and residential cabinet manufacturing industry*

(collectively, hereinafter the "KCMA Marks").

Certificates of Registration for the KCMA Marks issued by the United States Patent and Trademark Office ("USPTO") are attached hereto as **Exhibit 1.**

18. KCMA was founded in 1955 and has used and owned federal registrations for the KITCHEN CABINET MANUFACTURERS ASSOCIATION and KCMA word marks for decades for *Association services, namely, promoting the interests of the kitchen, bath and residential cabinet manufacturing industry* ("Association Services"). *See* Exhibit 1.

19. KCMA has also offered its certification services for *Kitchen and vanity cabinets* ("Certification Services") for decades, with the "Certified KCMA Cabinet" logo that is the subject of U.S. Registration No. 2873502 having been registered since 2004. *See* Exhibit 1.

5

20. Nearly all the KCMA Marks are all "incontestable" under 15 U.S.C. § 1065. *See Id.* (US Registration No. 7600531 being the exception, which registered in 2024).

21. KCMA has extensively and continuously promoted its Association Services as well as its Certification Services under its certification program, which has become extremely well known in the industry.

22. KCMA has strict standards and protocols to ensure that third parties who have been "certified" under the KCMA Marks for the Certification Services only use the KCMA Marks in an authorized manner and that such third parties' ("Certified Companies") cabinet products continuously maintain KCMA's strict standards for certification. Certified Companies are also required to maintain their status as being KCMA-certified to be able to continue using the KCMA Marks and to represent that their cabinets are certified by KCMA.

23. KCMA has taken measures to protect its valuable rights in the KCMA Marks, including the time and expense to federally register the above-cited marks with the USPTO.

24. The registrations for the KCMA Marks are in full force and effect. *See Id.*

25. By reason of KCMA's registrations and extensive use and promotion of its Association Services as well as its Certification Services and programs, the KCMA Marks have acquired significant recognition by consumers and the general public, including residents in the Commonwealth of Virginia and in this district.

26. Customers have come to recognize and expect that only high-quality cabinets that meet KCMA's standards bear the KCMA Marks and are able to hold themselves out as Certified Companies or those who offer "certified" cabinets.

27. As a result of its widespread, continuous, and exclusive use of the KCMA Marks

to identify KCMA as the source of the Association Services and Certification Services, KCMA owns valid and subsisting federal statutory and common law rights to the KCMA Marks.

### *Defendants' Infringement of the KCMA Marks*

28. Defendant K Cabinetry's cabinet products were certified as meeting the standards of KCMA's "KCMA A161.1" certification program, and Defendant and Plaintiff entered the License Agreement dated June 7, 2024.

29. Pursuant to the License Agreement, K Cabinetry was permitted limited use of the KCMA Marks during the relevant time period to promote that K Cabinetry's cabinet products had been KCMA-certified.

30. To maintain KCMA A161.1 certification and to use of the KCMA Marks, Plaintiff requires that all Certified Companies regularly submit their cabinets to be tested for compliance with KCMA's standards under the KCMA A161.1 certification program.

31. Cabinets that do not meet KCMA's strict standards are not permitted to be promoted under the KCMA Marks or to be labeled as "KCMA-certified" when that is not accurate or is no longer accurate (e.g., if certification has expired).

32. K Cabinetry's KCMA certification expired on February 28, 2025. KCMA sent a suspension letter to K Cabinetry on May 1, 2025 stating that it had not yet received K Cabinetry's cabinets for testing in order to maintain its cabinets' KCMA certification. The May 1, 2025 letter provided K Cabinetry with sixty (60) days to send its cabinets to avoid termination from the KCMA A161.1 certification program.

33. On July 16, 2025, KCMA sent a follow up letter to K Cabinetry confirming that K Cabinetry's KCMA A161.1 certification that had previously expired had been terminated because

KCMA had still not received cabinets from K Cabinetry for testing (the "July 16th Letter"). A copy of the May 1, 2025 communication and the July 16th Letter is attached hereto as **Exhibit 2.**

34. The May 1, 2025 letter references the February 28, 2025 expiration, and the July 16th Letter clearly states that K Cabinetry's KCMA A161.1 certification had been terminated and that

> "There are several obligations contained within the License Agreement pertaining to termination from the program. Starting today, the use of the certification seal must cease as well as any representation to being a KCMA A161.1 certification participant. This includes, but is not limited to, promotional materials, references on a website, and sales materials. I noticed several references to KCMA certification on the website. All unused certification seals must be returned to KCMA." *See* Exhibit 2.

35. On August 4, 2025, KCMA was informed that K Cabinetry was still representing that its cabinets were KCMA-certified, and that K Cabinetry had provided a third-party company, Monarc Construction, with a certificate that specifically stated that the "Expiration Date" of K Cabinetry's KCMA A161.1 certification was "August 18, 2025." *See* a copy of the K Cabinetry, Inc. Falsified Certificate ("the Falsified Certificate"), attached hereto as **Exhibit 3**. The correct, non-falsified K Cabinetry's certificate with a February 28, 2025 expiration date is attached hereto as **Exhibit 4**.

36. Upon information and belief, Defendant Altin Gashi was the primary contact who provided the Falsified Certificate to Monarc Construction on behalf of K Cabinetry.

37. Upon information and belief, Defendants had received KCMA's July 16th Letter as well as KCMA's prior May 1, 2025 communication regarding the February 28, 2025 expiration of K Cabinetry's KCMA A161.1 certification.

38. Upon information and belief, Defendants did knowingly and intentionally inform a third party, Monarc Construction, that K Cabinetry's cabinets were still KCMA A161.1 certified, and Defendants illegally changed the expiration date on the KCMA certificate to August 18, 2025 on the Falsified Certificate when in fact K Cabinetry's KCMA certification had already expired as of February 28, 2025. *See* Exhibits 2, 3 and 4.

39. As set forth above and in the July 16th Letter, per the parties' License Agreement, starting as of the date of termination (July 16, 2025) "***the use of the certification seal must cease as well as any representation to being a KCMA A161.1 certification participant.***" *See* Exhibit 2. Such use "includes, but is not limited to, promotional materials, references on a website, and sales materials." *See Id.*

40. In addition to Defendants' improper use of the KCMA Marks in connection with the Falsified Certificate and false representations to Monarc Construction made after expiration of K Cabinetry's cabinets' KCMA certification and KCMA's July 16th Letter, K Cabinetry's website at https://kcabinetry.net/about-k-cabinetry/ (a copy of which is attached hereto as **Exhibit 5** as of September 9, 2025) still references that "At K Cabinetry, pride is taken in our Kitchen Cabinet Manufacturers Association (KCMA) certification. This prestigious acknowledgement underscores our dedication to producing cabinetry of the highest quality and durability." *See* Exhibit 5.

41. Defendants' use of the KCMA Marks following the February 28, 2025 expiration of K Cabinetry's certification, the July 16th Letter, and termination of the License Agreement and all associated rights and licenses under the same, has and will continue to cause third parties, including those in the industry and supply chain, as well as consumers, to believe that K Cabinetry's

cabinets are in fact still certified and that Defendants are permitted to use the KCMA Marks when this is not the case.

42. K Cabinetry did not timely submit its cabinets for re-certification under the KCMA A161.1 certification program and, as such, its certification expired on February 28, 2025. Defendants further ignored and did not respond to or take other action regarding KCMA's May 1, 2025 communication or July 16th Letter.

43. Defendants' continued use of the KCMA Marks after February 28, 2025, and with notice following numerous letters from KCMA, was without the consent or permission of KCMA and, upon information and belief, intentional and willful. The cessation of such use was required under the terms of the License Agreement, expired on February 28, 2025, and was clearly described to K Cabinetry in the July 16th Letter.

44. Upon information and belief, Defendants, with knowledge of KCMA's rights in the KCMA Marks as well as K Cabinetry's obligations under the License Agreement and the KCMA A161.1 certification program, engaged in a deliberate course of conduct designed to appropriate the goodwill associated with the well-known KCMA Marks and certification programs in willful disregard of Plaintiff's rights.

45. Defendants' actions have and will continue to irreparably harm Plaintiff by diminishing the reputation and goodwill of the KCMA Marks and certification programs. The public association of the KCMA Marks and certification program with high quality standards is so great that Defendants' use of the KCMA Marks on products that have not been certified by KCMA (as K Cabinetry did not submit its cabinets for lab testing as required for on-going certification and license to use the KCMA Marks under the License Agreement) and on, upon

information and belief, providing a Falsified Certificate, presents a substantial risk to Plaintiff's reputation and the validity of its certification programs under the KCMA Marks.

46. Defendants' continued use of the KCMA Marks will, on information and belief, result in the loss of value of the KCMA Marks.

47. As a result of Defendants' infringing acts or misappropriations, Plaintiff has been irreparably damaged and, unless Defendants' infringing activities are enjoined, Plaintiff will continue to suffer irreparable injury and harm to its property and goodwill.

## COUNT I
### (Federal Trademark Infringement in Violation of the Lanham Act – 15 U.S.C. § 1114)

48. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-47 of this Complaint as if set forth in full.

49. Defendants' unauthorized use in commerce of the KCMA Marks as alleged herein is likely to deceive consumers as to K Cabinetry's goods being associated with or authorized by Plaintiff, and/or that such goods have been certified under KCMA's certification programs. Thus, it is likely that consumers will believe, contrary to fact, that Defendants' goods are offered, sold, authorized, endorsed, sponsored, and/or certified by KCMA and/or that KCMA has authorized or licensed the KCMA Marks for use by K Cabinetry. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

50. Defendants have committed the foregoing acts of infringement with full knowledge of KCMA's rights in the KCMA Marks, as well as Defendants' obligations under the License Agreement, with the willful intent to trade on KCMA's goodwill in the KCMA Marks and in KCMA's certification programs.

51. Defendants continue to use the KCMA Marks and hold K Cabinetry's goods out

as being certified by KCMA, despite being aware that K Cabinetry's cabinets' certification expired on February 28, 2025, and being notified of the termination of K Cabinetry's KCMA A161.1 certification under the License Agreement. *See, e.g.,* Exhibits 3, 4, and 5. Such actions by Defendants are with an intent and purpose to trade upon the goodwill of the KCMA Marks and KCMA's certification programs.

52. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff's goodwill and reputation and will continue to both damage KCMA and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

## COUNT II
### (Unfair Competition in Violation of the Lanham Act – 15 U.S.C. §§ 1125(a))

53. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-52 of this Complaint as if set forth in full.

54. Defendants' unauthorized use in commerce of the KCMA Marks, including to continue to promote K Cabinetry's cabinet goods on its website and to intentionally falsify the Falsified Certificate in the course of business, constitutes a false or misleading representation of fact that is likely to confuse or deceive consumers and/or cause consumers to believe mistakenly that K Cabinetry's goods are affiliated, connected, associated with, sponsored, approved, or certified by KCMA, when this is not the case. Rather, K Cabinetry's certification and any rights to use the KCMA Marks under the License Agreement have expired and been terminated. K Cabinetry's goods are no longer KCMA-certified and such certification expired on February 28, 2025. Defendants' actions therefore constitute unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125(a).

55. Defendants' use in commerce of the KCMA Marks constitutes a misappropriation

of the standards KCMA has developed and the KCMA Marks which it uses to identify Certified Companies and certified cabinet products. Such KCMA Marks and standards were created through substantial effort and expense and demonstrate to the public that certain Certified Companies' cabinet goods have met rigorous certification standards set by KCMA.

56. Defendants' use of the KCMA Marks constitutes false representations that Defendants are or have some connection or association with, or are sponsored and/or certified by, KCMA and/or that the KCMA Marks have been authorized or licensed for use by KCMA.

57. Said actions of Defendants constitute violations of 15 U.S.C. §1125(a) in that such false designation and representations of quality and/or association or certification by KCMA are used on or in connection with the goods that Defendants cause to enter into, or to affect commerce.

58. Defendants have used and are continuing to use the KCMA Marks with full knowledge of Plaintiff's trademark rights in the same, and after KCMA notified K Cabinetry of the termination of the License Agreement and of Defendants' obligations to cease all such use of the KCMA Marks. *See* Exhibit 2. Upon information and belief, said actions by Defendants are with an intent and purpose to trade upon the goodwill of KCMA, and are thus willful and deliberate.

59. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff's goodwill and reputation and will continue to both damage KCMA and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

## COUNT III

### (False Advertising in Violation of the Lanham Act – 15 U.S.C. § 1125(a)(1)(B))

60. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-59 of this Complaint as if set forth in full.

61. Defendants' conduct as described herein includes false or misleading descriptions or representations of fact that misrepresent the nature, characteristics, and qualities of Defendant K Cabinetry's goods – namely, that such cabinet goods are still actively certified by KCMA and the KCMA A161.1 certification program when such certification has long expired. *See, e.g.,* Exhibit 4.

62. Such misrepresentations have been made in commercial advertising or promotion, including in promotional materials on K Cabinetry's website. *See* Exhibit 5 ("Upholding Industry Standards – At K Cabinetry, pride is taken in our Kitchen Cabinet Manufacturers Association (KCMA) certification. This prestigious acknowledgement underscores our dedication to producing cabinetry of the highest quality and durability.").

63. Upon information and belief, Defendants included the KCMA Marks in promotional materials and made misrepresentations about the status of K Cabinetry's KCMA certification, and also included false information about the expiration of the KCMA certification on the Falsified Certificate, with the intent and purpose of influencing consumers to buy Defendant K Cabinetry's goods.

64. The promotional materials (namely, the K Cabinetry website) are provided to the public, and the Falsified Certificate was shared by Defendants with a third-party contractor. Thus, such materials were disseminated to the relevant purchasing public and others in the industry.

65. Defendants' intentional conduct to misrepresent the quality and certification

status of its goods amounts to false advertising.

66. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff's goodwill and reputation and will continue to both damage KCMA and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

## COUNT IV
### (Virginia Trademark Infringement)

67. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-66 of this Complaint as if set forth in full.

68. Defendants' unauthorized use in commerce of the KCMA Marks is likely to result in confusion, deception or mistake, and therefore constitutes an infringement of the KCMA Marks pursuant to VA Code §59.1-92.12.

69. Defendants' conduct is causing immediate and irreparable harm and injury to KCMA, and to KCMA's goodwill and reputation in both its brand and in its certification programs, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

## COUNT V
### (Unfair Competition Under Virginia Common Law)

70. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-69 of this Complaint as if set out in full.

71. Defendants' use of the KCMA Marks is being done with the intent to pass off goods as having been certified and approved by KCMA to trade on the goodwill created by Plaintiff in the KCMA Marks. Such use has continued in bad faith despite Defendants being notified that such use must cease and that all rights to use the KCMA Marks under the License

Agreement expired as of February 28, 2025.

72. Upon information and belief, Defendants also intentionally included false information on the Listing Certificate to indicate that they were still certified and permitted to use the KCMA Marks following the July 16th Letter and termination, when this is not the case.

73. Defendants' unauthorized use constitutes the common law tort of unfair competition.

74. Unless restrained by this Court, Defendants' actions will cause irreparable injury to Plaintiff.

75. Defendants' conduct is causing immediate and irreparable harm and injury to KCMA's goodwill and reputation in the KCMA Marks and its certification programs and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

### COUNT VI
### (Breach of Contract)

76. Plaintiff realleges and incorporates herein by reference the allegations contained in paragraphs 1-75 of this Complaint as if set out in full.

77. The License Agreement was executed between Defendant K Cabinetry Inc. and Plaintiff Kitchen Cabinet Manufacturers Association on June 7, 2024.

78. The License Agreement was an enforceable, valid, and binding contract between K Cabinetry Inc. and Kitchen Cabinet Manufacturers Association.

79. The License Agreement contained terms regarding post-termination obligations of K Cabinetry, including the same obligations set forth in Plaintiff's July 16th Letter to Defendant K Cabinetry. *See* Exhibit 2.

80. Such termination provisions and the restrictions contained in the License Agreement regarding use of the KCMA Marks are no greater than necessary to protect Plaintiff's legitimate business interests and its goodwill in the KCMA Marks.

81. Defendants violated the License Agreement by continuing to use the KCMA Marks after the License Agreement was terminated and Defendants were notified of the same by KCMA, including by continuing to promote K Cabinetry's goods using the KCMA Marks on K Cabinetry's website. *See* Exhibits 2, 3, and 5.

82. Defendant Altin Gashi violated the License Agreement by representing to third parties, including Monarc Construction, that K Cabinetry's products were still certified by KCMA, including by intentionally including false expiration dates on the Falsified Certificate. *See* Exhibit 3.

83. Defendants have not complied with the termination obligations set forth in the License Agreement and have breached the terms of the same by continuing to use the KCMA Marks and not returning all unused certification seals to KCMA as required under the License Agreement.

84. Defendants have no active license to use the KCMA Marks as the License Agreement and any rights thereunder expired on February 28, 2025, for which K Cabinetry received notice from KCMA. *See* Exhibit 2.

85. As a direct and proximate result of both Defendants' breach of the License Agreement, Plaintiff has suffered and will continue to suffer irreparable harm and damage to its business, including the potential for lost profits and loss of goodwill.

**DEMAND FOR JURY TRIAL**

86. KCMA requests trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

87. That Defendants and Defendant K Cabinetry's respective directors, officers, agents and employees, successors and assigns, and K Cabinetry's affiliates and their respective directors, officers, agents and employees, successors and assigns, and all others acting in knowing concert with them, be preliminarily and then permanently restrained and enjoined from:

(i) offering, marketing, advertising, displaying, selling, or otherwise providing cabinet goods or related services using the KCMA Marks or any variations thereof, alone or in combination with any other word, design or name, or any other mark which incorporates these marks or a confusingly similar version thereof in a manner which is likely to cause confusion, mistake or deception, including holding out that K Cabinetry and its goods are KCMA-certified under the KCMA A161.1 certification program;

(ii) otherwise infringing the KCMA Marks;

(iii) engaging in any other acts of unfair competition or false advertising; and

(iv) engaging in any deceptive trade practices in the offering of goods under the KCMA Marks and KCMA certification programs, or any other variations or simulations of Plaintiff's KCMA Marks.

88. That Defendants be directed to deliver up for destruction or to transfer, as applicable, all labels, signs, prints, packages, wrappers, receptacles, advertisements, seals, or other materials in its possession or custody and control which are within the United States of America, its territories and possessions, which display the KCMA Marks or any other variations

or simulations of the KCMA Marks.

89. That Plaintiff be awarded the profits secured by Defendants K Cabinetry Inc. and Altin Gashi as a result of their unlawful activities, and that said award be trebled as provided by law or in the alternative that KCMA be awarded statutory damages and prejudgment interest under 15 U.S.C. §1117(b)(2) in an amount determined by the Court for willful infringement.

90. That Plaintiff be awarded punitive damages in such amount as the Court and jury shall find sufficient to deter Defendants' willful unlawful conduct.

91. That Defendants be required to file with this Court and serve upon KCMA within thirty (30) days after entry of the order of judgment a report, in writing and under oath, setting forth the manner and form of Defendants' compliance with the Court's order.

92. That Plaintiff has such other and further relief as is warranted by the facts established at trial or which this Court may deem as just and equitable.

Respectfully submitted,

By: /s/ *Richard T. Matthews*
Richard T. Matthews
Virginia State Bar No. 71241
WILLIAMS MULLEN
200 SOUTH 10TH STREET, SUITE 1600
RICHMOND, VA 23219
UNITED STATES
rmatthews@williamsmullen.com,
creigel@williamsmullen.com,
edavenport@williamsmullen.com,
ip@williamsmullen.com
Telephone: (919) 981-4070